No. 33,555

In re Petition of EDMUND ROCKWOOD for Writ of Habeas Corpus.

Opinion filed July 10, 1937.

C. R. Sowers and William Ward, both of Wichita, for the petitioner.

No appearance was made for the respondent.

The opinion of the court was delivered by

DAWSON, C. J.: This is an original proceeding in habeas corpus in which the petitioner, Edmund Rockwood, seeks to be discharged from the custody of Joe Bauml, sheriff of Sedgwick county.

In response to a rule to show cause, the sheriff submits a journal entry of judgment and commitment which recites the pertinent facts of a criminal prosecution in the juvenile court of Sedgwick county wherein the state of Kansas was plaintiff and this petitioner, Edmund Rockwood, was defendant. The charge against him was that of contributing to the delinquency of five boys.

The journal entry recites that on May 22, 1937, this cause came on for trial, a jury was impaneled and sworn, and the state introduced its evidence and rested. Thereupon defendant moved to be discharged on the ground that the state had not proved the venue— that the alleged crime or crimes charged against him had been committed in Sedgwick county. What the state's evidence had tended to prove was that the alleged offenses—whatever they were—had apparently been committed at or near "South Waco," or about "Water and Lincoln."

But for the fact that this was a criminal case, it might be taken for granted that these words were the names of streets in the city of Wichita, in Sedgwick county.

However that may be, the journal entry of judgment continues:

". . . and thereupon after considering the arguments of counsel, and after hearing the excerpts of the state's witnesses pertinent to the question raised by the defendant's motion, as read by the court reporter in open court, said motion was by the court overruled, upon the grounds and for the reason that the state's evidence showed facts sufficient to enable and justify the court to take judicial notice that the alleged offenses were committed within the city of Wichita, county of Sedgwick, state of Kansas; whereupon the jury was recalled and discharged from further consideration of the case; and whereupon a directed verdict finding the defendant guilty of the crime of contributing to the delinquency of the following minors, viz.: Orville Smith, Bill Bailey and Gordon Stevenson, was entered by the court; and thereupon the case was continued until the 24th day of May, 1937, at 3 p. m. on said date, for sentence, and thereupon the defendant appeared at 3 p. m. on May 24, 1937, and the court as punishment for said conviction fined the defendant in the sum of $500 and sentenced him to confinement in the Sedgwick county jail for the term of one year, and thereupon the defendant was ordered delivered into the custody of sheriff of Sedgwick county, Kansas, for which commitment was duly issued. ROBT. B. MORTON, *Judge Pro Tem,*
*Juvenile Court of Sedgwick County, Kansas."*

Accordingly on May 24, 1937, a commitment was issued, and the petitioner was incarcerated, following which he applied to this court for release on habeas corpus. He predicates his right thereto on various grounds, the most obvious of which were the taking of the case from the jury after the petitioner was in jeopardy, and the peremptory and unauthorized disposition of the cause by the judge on his own responsibility.

The juvenile court has jurisdiction of the offense of contributing to the delinquency of a child (G. S. 1935, 38-416). The procedure for such trial is substantially the same as provided for the trial of misdemeanors before justices of the peace (G. S. 1935, 38-428). Such trial before a justice, so far as here pertinent, is as follows:

"The charge made against the defendant shall be distinctly read to him, and he shall be required to plead thereto. . . ." (G. S. 1935, 63-301.)

"After the plea of the defendant has been entered, if he plead not guilty, the defendant or complainant or county attorney may demand a jury. . . ." (G. S. 1935, 63-302.)

"All proceedings, including the mode of procuring and the grounds for a change of venue, upon the trial of misdemeanors before a justice of the peace, shall be governed by the provisions of the code of criminal procedure so far as the same are in their nature applicable, and in respect to which no provision is made by statute." (G. S. 1935, 63-312.)

The bill of rights of the Kansas constitution, section 5, provides: "The right of trial by jury shall be inviolate."

Section 10, in part, provides:

"In all prosecutions, the accused shall be allowed . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. No person shall be a witness against himself, or be twice put in jeopardy for the same offense."

Subject to some debatable exceptions of no present concern, when a person accused of crime is put on his trial in this state he cannot be deprived of a jury trial without his consent, and the judge has no more right to discharge the jury and make a finding of guilt on his own initiative than would the bailiff or the bystanders. Of course, where the state's evidence wholly fails to make a prima facie case of guilt, it is altogether proper to direct the jury to return a verdict of not guilty, or otherwise to make summary disposition of the cause and order the defendant discharged.

The constitution guarantees that no person shall be twice put in jeopardy for the same offense. What is jeopardy? It is the plight of a person accused of crime when he has been brought into a court of competent jurisdiction, and has been informed of the offense charged against him, and a plea of not guilty has been entered in his behalf, and when a jury has been impaneled and sworn to try him.

In May's elementary textbook on the Law of Crimes, 2d ed., it is said:

"It is a well settled and most salutary principle of criminal law that no person shall be put upon trial twice for the same offense.

. . . . . . . . . . . . . .

"So firmly is this doctrine established, that the government will not be allowed to institute a second prosecution, or put the prisoner to a new trial, even though his acquittal is consequent upon the judge's mistake of law, or the jury's disregard of fact.

. . . . . . . . . . . . . .

"To give the accused, therefore, a good plea that he has once been put in jeopardy, it must appear that he was put upon trial in a court of competent jurisdiction, upon an indictment [or complaint or information] upon which he might have been lawfully convicted of the crime charged, and before a jury duly impaneled, and that, without fault on his part, he was convicted or acquitted, or that, if there was no verdict, the jury were unlawfully discharged." (pp. 92, 93, 94.)

The rule is that when a person charged with the commission of a crime is brought to trial, and a jury is impaneled and sworn to try the cause, jeopardy attaches; and if for any reason other than those mentioned in section 60-2914 of the General Statutes of 1935, the jury is discharged without reaching a verdict, the defendant cannot again be tried for that offense. G. S. 1935, 60-2914, reads:

"The jury may be discharged by the court on account of the sickness of a juror, or other accident or calamity, or other necessity to be found by the court requiring their discharge, or by consent of both parties, or after they have been kept together until it satisfactorily appears that there is no probability of their agreeing."

In *State v. Reed,* 53 Kan. 767, 37 Pac. 174, this court said:

"The discharge of a jury before the completion of a trial, without the consent of the accused, and without sufficient reason, will ordinarily bar a further trial." (Syl. ¶ 1.)

In *State v. Allen,* 59 Kan. 758, 54 Pac. 1060, the first paragraph of the syllabus reads:

"Where a defendant has been placed upon trial on a criminal charge and the jury is duly impaneled and sworn, the court cannot arbitrarily discharge the jury before a verdict is returned; and a discharge in such case unless an absolute necessity, and for reasons which are sufficient in law, will operate as an acquittal."

In *State v. Brick Co. et al.,* 117 Kan. 192, 230 Pac. 1035, it was said:

"An accused is in legal jeopardy when a trial is begun before a court of competent jurisdiction upon an indictment or information which is sufficient to sustain a conviction, and when jeopardy attaches the discontinuance of the trial without the consent of the accused or an absolute necessity is a bar to another prosecution for the same offense a second time." (Syl. ¶ 1.)

See, also, *State v. Rook,* 61 Kan. 382, 59 Pac. 653; *State v. Stiff,* 117 Kan. 243, 231 Pac. 48; Id., 118 Kan. 208, 234 Pac. 700; *State v. Madden,* 119 Kan. 263, 237 Pac. 663; *State v. Hendren,* 127 Kan. 497, 274 Pac. 274; *State v. Zier,* 138 Kan. 235, 237, 25 P. 2d 583; *In re Brown,* 139 Kan. 614, 32 P. 2d 507.

In view of the foregoing it is perfectly clear that the petitioner has been in jeopardy for whatever offenses were charged against him, and he cannot be put in jeopardy a second time on those charges. Touching the proceedings in the juvenile court subsequent to the summary discharge of the jury, it need only be remarked that they were without legal effect, and the judgment and commitment were, and are, void.

The petitioner also raises a question touching the failure to prove the venue, because of the oversight, if such it was, to introduce evidence that the alleged offenses were committed in Sedgwick county. This point is of no consequence in this case; but such a "slip" in the state's proof, while never to be commended, is not ordinarily held to constitute prejudicial error nowadays. (See *State v. Bell,* 121 Kan. 866, 250 Pac. 281, and citations.)

The writ is allowed and the sheriff is directed to release the petitioner.