No. 37,723

THE STATE OF KANSAS, *Appellee*, v. ERNEST RADKE, *Appellant*.

(212 P. 2d 296)

Opinion filed December 10, 1949.

*Bruce C. Heath,* of Abilene, argued the cause and was on the briefs for the appellant.

*John V. O'Donnell,* county attorney of Ellsworth, argued the cause, and *Harold R. Fatzer,* attorney general, and *C. Harold Hughes,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: This is an appeal from a conviction upon a charge of attempting to commit statutory rape upon a five-year-old girl. Appellant, a man in his middle forties, was first tried on October 14, 1948, but the jury was unable to agree upon a verdict and it was declared to be no trial. At the following term, and on February 16, 1949, appellant was tried and convicted.

Preliminary to the trial of October 14, 1948, appellant was arraigned and pleaded "not guilty" to an information which is now claimed to be defective in that it failed to set forth the overt acts tending to accomplish the commission of an attempt to commit rape. Appellant did not attack the information prior to the trial of October 14, 1948, and now concedes that he thereby waived any such deficiency in that information insofar as the first trial was concerned. Sometime between October 14, 1948, and February 16, 1949, the county attorney filed an amended information which was identical with the original information except that it contained a statement as to the overt acts. The amended information was not filed with leave of court nor pursuant to any court order. The trial of February 16, 1949, was commenced, a jury was empaneled and sworn, the county attorney made his opening statement, and the witnesses were sworn without appellant being arraigned or entering

a plea to the amended information, or without it being read to him by the court. The state called its first witness who, in response to two questions by the county attorney, stated her name and address. Thereupon appellant's counsel asked to present a legal matter and the jury was temporarily retired from the courtroom. Appellant then offered and argued two motions: (1) A motion to quash and strike the amended information from the files for the reasons that defendant was not arraigned, had not had the amended information read to him in open court, and did not enter a plea thereto prior to testimony being taken in the case; and (2) a motion to quash the original information for the reason that it omitted a statement of the overt acts and therefore did not state facts sufficient to constitute a crime. The trial court overruled both motions, but *concurrently therewith,* granted the state permission to file the amended information and ordered the defendant brought forward for arraignment. The amended information was read to appellant and he was asked to plead. At that point counsel for appellant advised the court that appellant refused to plead for the reason "that he had been put on trial once before and is now in jeopardy a second time and refuses to plead to the amended information as read." A plea of "not guilty" was then entered on behalf of appellant by the court. The court then ordered the jury to be recalled and resworn, the state's opening statement to be made again, and the witnesses resworn—to all of which appellant objected contending that he was being placed in double jeopardy. Counsel for appellant again objected to the trial court's ruling on his motions to quash and advised that he was then and there appealing from said ruling. When these formalities were concluded the trial continued with the introduction of the state's evidence. As the trial progressed, appellant objected to the testimony of each state witness and in each instance save one, moved that the testimony of the respective witnesses be stricken. Other than this, appellant did not participate in the trial and offered no evidence in his own defense. After his conviction, appellant filed a motion for new trial which the trial court overruled. The record shows that sentence was pronounced pursuant to G. S. 1935, 21-424 and 21-101, § 2.

Appellant contends that he was in jeopardy when the trial began on February 16, 1949, that is, at the time the jury was empaneled and sworn, the opening statement made by the state, and the first state's witness was questioned as to her name and address. He

argues that at that time there was in fact no amended information because it had not been filed by leave of court and appellant had not then been afforded the opportunity of having it read to him nor of pleading to it. He argues further that the original information was a nullity because of its insufficiency. For these reasons it is urged that both motions to quash should have been sustained by the trial court. Appellant contends that for the trial court to recess the jury, permit the filing of the amended information, arraign the appellant thereon, and then recall the jury and begin all over, placed him in jeopardy a second time. These contentions of appellant require careful analysis.

I. The original information filed prior to October 14, 1948, to which appellant pleaded "not guilty," charged as follows:

"That on or about the 21st day of August, 1948, at the County of Ellsworth and State of Kansas then and there being, one Ernest Radke, in and upon one Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway, a female person under the age of 18 years, to wit: of the age of 5 years, unlawfully and feloniously did make an assault, and her, the said Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway, then and there intentionally, unlawfully, and feloniously did attempt to carnally know and abuse, contrary to the form of the Statutes in such case made and provided and against the peace and dignity of the State of Kansas."

The charge as above stated is in the language of the statute (G. S. 1935, 21-424, and in a general way meets the requirements of G. S. 1935, 21-101, by charging the doing of an act toward the commission of the offense—i. e., "attempting to carnally know and abuse"). It was not fatally defective, as contended by appellant, merely because it omitted all of the specific overt acts which may be relied upon to constitute the attempt, although it may have been subject to motion. In *State v. Kelly*, 125 Kan. 805, 265 Pac. 1109, 88 A. L. R. 351n, it was held that where an information charged that an attempt to rape was accomplished by a forcible assault, it was defective in that it failed to describe the specific acts constituting the assault, but was not fatally defective or prejudicial to the defendant. The case of *State v. Russell*, 64 Kan. 798, 68 Pac. 615, was reversed in this court because the information did not set forth the specific acts done toward the commission of the offense of assault with attempt to commit rape—but there, the information had been attacked by a motion to quash and it was held the trial court erred in overruling that motion.

Perhaps the information in the instant case was subject to ob-

jection by defendant's motion to quash—but when so challenged it could be amended provided any such amendment was made pursuant to G. S. 1935, 62-808. The original information was not challenged at the first trial (which by reason of a hung jury resulted in a mistrial, or no trial) and it was not challenged until after the retrial began on February 16, 1949. It is true the county attorney had sought to amend the information during the interim between October 14, 1948, and February 16, 1949, but having done so after defendant's arraignment thereon and without leave of court, the requirements of section 62-808, G. S. 1935, were not met and this attempt to amend was a nullity. However, when the original information was challenged by defendant's motion to quash after the trial had begun, the district court properly permitted the state to amend by setting out the specific overt acts constituting the attempt. The amended information charged:

"That on or about the 21st day of August, 1948, at the County of Ellsworth and State of Kansas then and there being, one Ernest Radke, in and upon one Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway a female person under the age of eighteen years to-wit: of the age of five years unlawfully and feloniously did make an assault, and her, the said Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway, then and there intentionally, unlawfully, and feloniously did attempt to carnally know and abuse, *by then and there kissing her, the said Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway, and then and there placing his private parts at, against and upon the private part of her, the said Peggy Perez, also known as Pauline Perez, also known as Pauline Galloway,* contrary to the form of the Statutes in such case made and provided and against the peace and dignity of the State of Kansas." (Amended portion in italics.)

This amendment at this stage of the proceedings did not change the charge, nor did it urge any new issues. Such amendments may be made during the trial under G. S. 1935, 62-808, of the criminal code (*State v. Wilson*, 110 Kan. 131, 202 Pac. 860, and cases cited therein; *State v. Stiff*, 117 Kan. 243, 250, 234 Pac. 700). It was not error to permit the amendment when appellant could not possibly have been prejudiced thereby (*State v. Davis*, 106 Kan. 527, 529-30, 188 Pac. 231; *State v. Eye*, 161 Kan. 69, 70-71, 166 P. 2d 572). In considering the importance of this phase of appellant's argument from the standpoint of his being prejudiced, it may be noted that an information charging *rape* need not set out any overt acts—and that a defendant may be convicted of *attempt to rape* when tried upon the charge of rape (G. S. 1935, 21-424; *State v. Allen*, 163 Kan. 374, 375, 183 P. 2d 458, and cases cited). As a further assurance

that there could be no prejudice or surprise to appellant, we call attention to the fact that the specific overt acts set out in the amended information were testified to specifically by the state's witness and referred to in the state's opening statement in the first trial of October 14, 1948. The amended information being properly filed, and the foregoing proceedings having transpired concurrently with the overruling of defendant's motions to quash both the original and the amended informations, the trial court's ruling as to the original information became a moot question and its order overruling the motion to quash the amended information was not erroneous.

II. The information was amended, read to the defendant, and his plea of "not guilty" entered thereto in the absence of the jury. The jury was then called back into the courtroom and resworn. Appellant contends this placed him in jeopardy for the second time in a single day—that his jeopardy attached first when the jury was sworn before the information was amended, and again when the jury was resworn *after* the amended information was filed and he was rearraigned thereon. Just what should a trial court do with respect to the trial proceedings when an amendment to the information is permitted during the trial? In *State v. Davis*, supra, it was held (Syl. ¶ 5) that after an amendment to the information had been properly made subsequent to empaneling the jury, a rearraignment of the defendant was not required unless demanded by him. Whether or not in the instant case a rearraignment was necessary need not be discussed because appellant was rearraigned. He did not request rearraignment but on the contrary objected to it and to every other step of these proceedings upon the theory that he was being placed twice in jeopardy. But such rearraignment, whether necessary or not, had nothing to do with the status of appellant's jeopardy. His jeopardy attached when the jury was empaneled and sworn (*In re Rockwood*, 146 Kan. 386, 388, 69 P. 2d 703; *In re Brown*, 139 Kan. 614, [Syl. ¶ 3], 32 P. 2d 507; *Crebs v. Amrine*, 153 Kan. 736, 745, 113 P. 2d 1084; *Tines v. Hudspeth*, 164 Kan. 471, 474, 190 P. 2d 867). Had this jury been discharged for any reason other than those mentioned in G. S. 1935, 60-2914, there might be merit to appellant's plea of his being twice in jeopardy in violation of section ten of the bill of rights of our state constitution. But this jury was not *discharged*—it was merely recessed, and removed from the courtroom while the information was amended and while appellant was rearraigned on the amended information.

After those formalities, the same jury was recalled to proceed with the trial. Following the rearraignment, it was not necessary to re-swear the jury and repeat the opening statements of counsel. To do so was a useless gesture which certainly did not have the effect of placing appellant in jeopardy a second time. His *first and only jeopardy* attached when the jury was first empaneled and sworn on February 16, 1949, and it was that jury which tried and convicted him.

III. Next, appellant contends that he had no opportunity what-soever to present his defense at the trial on February 16, 1949, be-cause if he had participated in that trial he would have been deemed to have waived all right to complain of being deprived of a fair and impartial trial. In this respect he relies upon the case of *State v. Wilson,* 42 Kan. 587, 22 Pac. 622. We have some difficulty in fol-lowing appellant's argument that in addition to making proper and timely objections, a defendant must abandon every effort toward his defense in order to later complain of error; and we fail to find support for such a theory in the case of *State v. Wilson,* supra. Appellant's strategy during the trial was a subject for his own di-rection, and he cannot be heard to say on appeal that he was denied a fair and impartial trial when his defense failed because the strat-egy he pursued proved to be improper or ill-advised. And appel-lant's argument that such lack of participation in the trial did not waive his right to complain on appeal becomes a moot contention when it is here determined that there was no error below.

IV. It is also urged by appellant that the manner in which the trial court overruled his objections after appellant had expressed his intention to appeal from the decision overruling his motions to quash the informations constituted misconduct on the part of the trial court. A careful examination of the record fails to reveal the slightest support for this argument.

V. Error is also urged in admitting on behalf of the state the testimony of a nine-year-old girl, appellant claiming that she was unqualified and incapable of understanding the meaning of an oath. Appellant cites cases (and there are many others not cited in his brief) to the effect that a person incapable of understanding the meaning of an oath and incapable of receiving just impressions of the facts respecting which he is examined, is an incompetent wit-ness. That principle of law is too well settled for argument, both by our decisions and by statute (G. S. 1935, 60-2805, *Second*). But

whether a witness has the capacity as required by the foregoing rule, and determination of the witness' competency, is a matter for the sound discretion of the trial court (*State v. Gaunt* [Syl. ¶ 3], 98 Kan. 186, 189, 157 Pac. 447; *Devine v. Heckman* [Syl. ¶ 2], 121 Kan. 22, 245 Pac. 1037; *State v. Wright*, 121 Kan. 507, 247 Pac. 635). Appellant argues that the trial court found this nine-year-old girl to be a competent witness and permitted her to testify at the trial on February 16, 1949, when at the first trial four months earlier, she was found to be incompetent. If it was true that she had been found to be incompetent on October 14, 1948, it does not necessarily follow that she still must be incompetent on February 16, 1949. However, it is not a fair statement to say that she was found to be incompetent at the time of the first trial. The record of that trial indicates the state had some difficulty in establishing the competency of the child as a witness. She first answered that she didn't know about the obligation to tell the truth while under oath in court—but later upon examination by the court, she said she did know what it was to take an oath to tell the truth. However, after some colloquy between court and counsel, the state voluntarily withdrew her as a witness and the trial court never actually passed upon her competency to testify on October 14, 1948. Then on February 16, 1949, she was again called as a witness and her answers to preliminary questions pertaining to her qualifications fully satisfied the trial court and she was permitted to testify. It is not contended by appellant that the trial judge abused his discretion in this respect —and indeed, our examination of the record discloses no such abuse.

VI. In this case, the trial court exercised its sound discretion under all the circumstances and the substantial rights of the appellant were not prejudiced by any of the proceedings had herein. A verdict of guilty in a criminal case will not be disturbed unless substantial rights of the defendant have been prejudiced. G. S. 1935, 62-1718, provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The complete transcribed record of this case is before us, and we have carefully reviewed it. Being unable to find any error prejudicial to the rights of the appellant, the judgment of the trial court is affirmed.